**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**(INDIANAPOLIS DIVISION)**

| | | |
|---|---|---|
| IN RE: | **:** | Chapter 11 |
| | **:** | |
| CHESTERFIELD DAIRY, LLC, | **:** | Case No. 10-11888-JKC-11 |
| | **:** | |
| Debtor. | **:** | Judge James K. Coachys |

**EMERGENCY MOTION OF THE AGSTAR ENTITIES TO TRANSFER VENUE OF**
**THE DEBTOR'S BANKRUPTCY CASE TO THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

Now come AgStar Financial Services, FLCA ("FLCA") and AgStar Financial Services,

PCA ("PCA" and together with FLCA, "AgStar" or the "AgStar Entities"), parties in interest and

the largest secured creditors in the above-captioned bankruptcy case (the "Case"), and hereby

respectfully move (the "Motion") this Court to enter an order, pursuant to 28 U.S.C. § 1412 and

Rule 1014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), transferring

the venue of the Case filed by Chesterfield Dairy, LLC (the "Debtor") to the United States

District Court for the Northern District of Ohio (the "Ohio Court") to be administered as a

bankruptcy case under title 11 and pursuant to 28 U.S.C. § 1334(a) through (e).  In support of

this Motion, AgStar respectfully states as follows:

**INTRODUCTION**

As set forth below, Debtor's bankruptcy filing is a blatant last-ditch attempt to stall the

imminent sale of certain assets to a willing buyer scheduled to occur close in the next two weeks.

Among the numerous glaring deficiencies in this Case is Debtor's choice of venue.  There is no

jurisdictional basis for this case to be filed in the Southern District of Indiana.  Therefore, this

case must be transferred to the proper venue.  The Ohio Court is the only proper venue because

Ohio is the location of incorporation of the Debtor, the location of its principal place of business,

and the situs of its principal assets and books and records.  Indiana is merely the location of a

dairy that has some common ownership, but does not satisfy the Bankruptcy Code definition of an "affiliate."

Moreover, even assuming venue were proper in Indiana, venue of this Case should still be transferred to the Ohio Court in the interest of justice and for the convenience of the parties pursuant to Bankruptcy Rule 1014(a)(1).  Ohio provides the most convenient and appropriate forum for almost all parties in interest for the following reasons: (a) all of Debtor's primary real and personal property is located in the Northern District of Ohio; (b) Debtor's management is located in the Northern District of Ohio; (c) the vast majority of witnesses necessary to the administration of the Case are located in the Northern District of Ohio; (d) Debtor is an Ohio limited liability company with its principal place of business in the Northern District of Ohio; (e) the legal rights of Debtor, the AgStar Entities and other major creditors are controlled by Ohio law, including the Hopewell/Chesterfield Case (as defined herein) currently pending in the United States District Court for the Northern District of Ohio (the "District Court"); and (f) the interests of justice and the convenience of the parties mandate a transfer to the Ohio Court.

## JURISDICTION

1.      This Court has jurisdiction over matters involving voluntary petitions pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (C).  This Court has authority to grant the relief requested pursuant to 28 U.S.C. §§ 1408 and 1412, and Bankruptcy Rule 1014.

## STATEMENT OF THE FACTS

2.      August 8, 2010 (the "Petition Date"), the Debtor filed its bankruptcy petition pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in this Court.

3.     Debtor owns certain real estates on which it used to operate a commercial dairy farm.  The dairy farm is no longer in operation.

4.     From and since, September 29, 2009, the Debtor and its assets have been the subject of that certain litigation pending in the District Court in the case styled as *AgStar Financial Services, FLCA, et al. v. Hopewell Dairy LLC, et al.*, Case No. 3:09CV02237 (also involving Hopewell Dairy Leasing, LLC a separate chapter 11 debtor in this District[1]) (the "Hopewell/Chesterfield Case").[2]

5.     On September 30, 2009, the District Court entered that certain Interim Order Appointing Receiver (the "Receiver Order") [District Court Docket No. 11] Appointing Roach & Associate, LLC (through its agent John M. Roach), (the "Receiver") receiver of Debtor's assets. The Receiver was appointed on a final basis on October 13, 2009 [District Court Docket No. 45] and since that date has had possession, custody and control of the Receivership Property (as defined in the Receiver Order), which comprises substantially all of the assets of Debtor and all of the assets of Hopewell.

6.     Debtor is the owner of the real estate, improvements, buildings and fixtures located at 15710 County Road 14, City of Lyons, County of Fulton, Ohio 43533 (the "Chesterfield Mortgaged Premises" or the "Property").

7.     The Receiver has sold Debtor's cows to various purchasers in private sales pursuant to its authority under the Receiver Order.   Similarly, the Receiver has liquidated Debtor's equipment (e.g., tractors, skid steers, trucks, etc), by means of (a) an auction sale on

---

[1] Contemporaneously with the filing of this Motion, the AgStar Entities have filed similar motions in the chapter 11 bankruptcy cases filed on the same date of this chapter 11 case styled as *In re Hopewell Dairy Leasing, L.L.C.,* Case No. 10-11891-FJO-11, *In re Rock Creek Dairy Leasing, LLC,* Case No. 10-11890-JKC-11, *In re Oolman Dairy Leasing LLC,* Case No. 10-11889-JKC-11 (collectively together with the above-referenced case, the "Dairy Bankruptcy Cases").

[2] Pursuant to Rule 201 of the Federal Rules of Evidence, the AgStar Entities respectfully request that this Court take judicial notice of the filings made in the District Court in the Hopewell/Chesterfield Case.

June 12, 2010, or (b) the return of such equipment to the applicable supplier, owner or lender that had a purchase money security interest in such equipment or owned such equipment and leased it to Debtor.

8.      On June 23, 2010, the Receiver filed that certain *Receiver's Expedited Motion for Entry of an Order (1) Authorizing Sale of Receivership Property Free and Clear of Liens, Claims and Encumbrances; (2) Approving Bid Procedures with regard to Sale of Receivership Property; (3) Scheduling Consolidated Auction; (4) Scheduling Sale Hearing; and (5) Approving Other Matters Related to the Sale of Receivership Property* and Exhibits thereto [District Court Doc. No. 182] (the "Sale Motion").  Debtor did not file any objection to the Sale Motion despite notice and despite counsel being present at the status conference regarding the Sale Motion that occurred on July 6, 2010.

9.      On July 7, 2010, the District Court entered that certain *Order (1) Approving Bid Procedures; (2) Scheduling Auction; (3) Scheduling Sale Hearing; (4) Approving Form and Manner of Service of Notice of Bid Procedures; And (5) Granting Related Relief*  and Exhibits thereto [District Court Docket No. 196] (the "Bid Procedures Order") which provided, among other things, the establishment of certain bidding procedures (the "Bid Procedures") to allow the Receiver to sell the Property (defined below) by public auction to the highest and best bidder. Debtor did not file any objection to the Bid Procedures Order.

10.      On July 7, 2010, as noted, the District Court entered the Bid Procedures Order. On July 26, 2010, in accordance with the Bid Procedures Order, the Receiver filed that certain *Notice of Stalking Horse Bidder and Accepted Stalking Horse Bid for Chesterfield Receivership Property* [District Court Docket No. 205], notifying all defendants in the Hopewell/Chesterfield

Case and all counsel of record for all defendants, among others, of a "Stalking Horse Bidder" or committed purchaser for the Property.

11.     On August 4, 2010, the Receiver conducted a public auction of the Property and the other Receivership Properties owned by the Debtors in the other Dairy Bankruptcy Cases. After competitive bidding, the auction culminated in a Successful Bidder[3] for the Property at $3,000,000.00. On August 4, 2010, and in accordance with the Bid Procedures, the Receiver filed that certain *Receiver's Notice of Consolidated Auction Results for the Chesterfield Receivership Property* [District Court Docket No. 211].

12.     On August 5, 2010, the deadline to object to the sale of the Property passed without any objections being filed, including any objection by the Debtor. On August 6, 2010, the Receiver uploaded a proposed order [District Court Docket No. 214] to approve the sale of the Property to the Successful Bidder in advance of the hearing on August 9, 2010, before District Judge Katz, which included copies of the fully executed Purchase Agreement[4] with the Successful Bidder containing no financing contingencies.

13.     On the eve of confirmation of the sale of the Property, and after substantial time and expense, Debtor filed this bad faith and skeletal chapter 11 proceeding in the wrong venue.

14.     On Debtor's bankruptcy petition, in the Information Regarding the Debtor – Venue section, Debtor indicates that "Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition for a longer part of such 180 days than in any other District." This statement regarding venue is patently false.

---

[3] As defined in the Bid Procedures Order.
[4] As defined in the Bid Procedures Order.

15.     According to Debtor's corporate filings with the Ohio Secretary of State, the Debtor is an Ohio limited liability company which, upon information and belief, owns property located at 15710 County Road 14, City of Lyons, County of Fulton, Ohio 43533.  Its mailing address (commonly understood as the principal place of business), the registered agent's address and the officer's address is 9160 Dover Drive, Wauseon, Ohio 43567-9211.

16.     According to Debtor's petition, it appears that the sole basis for the venue of the Debtor's bankruptcy case in Indiana is the fact that Union Go Dairy Leasing, LLC ("Union Go") filed for bankruptcy protection in this Court on or about February 4, 2010 in a case styled *In re Union Go Dairy Leasing, LLC*; Case No. 10-01703-JKC-11.  On information and belief, the only relationship between Union Go and the Debtor *may* be some common ownership through a non-debtor entity named Midwest Dairy Development, LLC ("Midwest").  Midwest is an Ohio limited liability company with its principal place of business located in Wauseon, Ohio.

17.     Debtor has not yet filed any first-day motions, applications, or affidavit in support of its chapter 11 filing.  Nevertheless, it is clear from the timing of such bankruptcy filing that the sole reason for filing for bankruptcy protection was an attempt to stall the imminent approval of the sale of Debtor's assets by the District Court.  Debtor did not, and could not have any good-faith basis to, object to the sale of its assets.

18.     On information and belief, any of Debtor's substantial assets, as well as its books and records are located in the Northern District of Ohio and its management is located in the Northern District of Ohio.

19.     Debtor listed, AgStar as its only creditor.  AgStar's principal place of business is in Mankato, Minnesota.  It is not an Indiana corporation.  In addition, Debtor did not list any taxing authority as a creditor, despite the fact that on information and belief the Debtor's sole

remaining asset is a certain parcel of real estate.  AgStar speculates that Debtor has failed to properly list its creditors.  In any event, the Case effectively centers on the real estate located in Fulton County, Ohio.

## RELIEF REQUESTED

20.     By this Motion, AgStar respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, (a) transferring the venue of the Case filed by the Debtor to the Ohio Court and (b) granting such further and other relief as may be appropriate and just.

## BASIS FOR RELIEF REQUESTED

21.     For the cost-efficient administration of this Case and in the interests of justice and convenience, AgStar submits that this Court must transfer venue to where the Case belongs, in the Ohio Court.  AgStar believes that not only the applicable law requires this result, but that the interest of justice and convenience of the parties requires the same.

### A.     VENUE OF THIS BANKRUPTCY CASE IS IMPROPER DUE TO THE LACK OF PRINCIPAL PLACE OF BUSINESS IN INDIANA

22.     Proper venue is determined by subsection (1) of 28 U.S.C. § 1408, which sets forth the following grounds for venue: domicile, residence, principal place of business or principal place of assets.  If venue is improper (and barring dismissal), the court must transfer the case to a proper venue pursuant to Bankruptcy Rule 1014(a)(2).  The Debtor's venue choice of Indiana does not withstand scrutiny as Indiana is neither the domicile, residence, principal place of business nor the location of the principal assets of the Debtor.

23.     It is undisputed from the information contained in Debtor's petition, and confirmed through the Ohio Secretary of State's website, that the Debtor is incorporated in Ohio. Likewise, Debtor's petition concedes that its principal place of business as being in Ohio.

24.     "In determining the principal place of business of a partnership or corporation, courts have routinely looked to where significant business decisions are made, sometimes described as the debtor's 'nerve center.'  *See, e.g. In re Washington, Perito & Dubic*, 154 B.R. 835, 859 (Bankr. S.D.N.Y. 1993); *In re Suzanna De Lyon, Inc.*, 125 B.R. 863, 867 (Bankr. S.D.N.Y. 1991); *In re Garden Manor Assocs., L.P.*, 99 B.R. 551 (Bankr. S.D.N.Y. 1988); *In re Willows Ltd., P'ship*, 87 B.R. 684, 685 (Bankr. S.D. Ala 1988); *In re 1606 New Hampshire Ave. Assocs.*, 85 B.R. 298, 303 (Bankr. E.D. Pa. 1988); *but see In re Great Lakes Hotel Assocs.*, 154 B.R. 667, 672 (E.D. Va. 1992) (noting that the 'nerve center' determination does not de facto resolve the question of 'principal place of business.')"  *In re Peachtree Lane Assocs.*, 198 B.R. 272, 280 (N.D. Ill. Bankr. 1996).  The "business decision" test is applicable regardless of the location of the debtor's assets.  *Id.*

25.     The mere fact that the Debtor checked a box that contradicts the clear jurisdictional facts is insufficient to ground venue on the basis of residence or domicile.  *See In re Suzanne de Lyon, Inc.*, 125 B.R. 863, 866 (Bankr. S.D.N.Y. 1991) (noting that references to "domicile" and residence do not apply to corporations, and only principal place of business and principal place of assets should be considered for determining whether venue is proper); *In re J & L Plumbing & Heating, Inc.*, 186 B.R. 388, 390-91 (Bankr. E.D. Pa. 1995) (noting that to the extent "domicile" and "residence" under 28 U.S.C. § 1408 apply to corporations, these terms should be understood as the corporation's state of incorporation or principal place of business); *see also In re Peachtree Lane Assocs., Ltd.*, 150 F.3d 788 (7th Cir. 1998) (general discussion regarding what constitutes a debtor's principal place of business when determining a motion to transfer venue).

26.    Debtor's principal place of business and the Debtor's "nerve center" is located in the Northern District of Ohio.  Debtor has no relationship to the State of Indiana.  Accordingly, this Court must transfer venue of this Case to the Ohio Court.

**B.    EVEN IF THE COURT FINDS VENUE TO BE PROPER UNDER 28 U.S.C. § 1408, THE INTEREST OF JUSTICE AND THE CONVENIENCE OF THE PARTIES DICTATE THAT THE COURT TRANSFER THESE CASES**

27.    Even assuming venue were proper in Indiana, which it is not, the Court should still transfer venue of the Debtor's case to the Ohio Court.  Bankruptcy Rule 1014 and 28 U.S.C. § 1412 both provide a mechanism for transfer to another district if the Court determines that the transfer is in the interest of justice or for the convenience of the parties.

**(i)    Interest of Justice**

28.    "The 'interest of justice'… is a broad and flexible standard which must be applied on a case by case basis."  *In re Eclair Bakery Ltd.*, 255 B.R. 121, 141 (Bankr. S.D.N.Y. 2000). When considering a transfer of venue, courts have previously found that flagrant forum shopping is not in the "interest of justice."  *Id.*

29.    Evaluation of the interest of justice involves the following factors:

a)    Whether transfer would promote the economic and efficient administration of the bankruptcy estate;

b)    Whether the interests judicial economy would be served by the transfer;

c)    Whether the parties would be able to receive a fair trial in each of the possible venues;

d)    Whether either forum has an interest in having the controversy decided within its boarders;

e)    Whether the enforceability of any judgment would be affected by the transfer; and

f)    Whether the plaintiff's original choice of forum should be disturbed.

*In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008). *See also, Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995) ("while there is no definitive formula or list of the factors to consider … courts have considered many variants of the private and public interests protected by the language of § 1404(a) [in determining when change of venue is appropriate under § 1412]").

30.    Moreover, courts have previously found that the "expectations of the parties" should be considered when determining whether venue is appropriate. *See In re Washington, Perito & Dubuc*. 154 B.R. 853, 861 (Bankr. S.D.N.Y. 1993). In *Washington*, the court analyzed and determined venue, and ultimately transferred venue, in light of the "location" of the debtor's principal assets (accounts receivable) while performing a venue analysis in connection with the perfection of a security interest under the Uniform Commercial Code. *Id.* Applying the *Washington* analysis here, with Debtor's extensive Ohio contacts, it is doubtful that any entity involved with this bankruptcy case would "expect" that the Debtor would file in this Court rather than the Ohio Court.

31.    Another factor considered by courts in deciding whether the "interest of justice" is whether either forum (the current or prospective) has an interest in seeing the bankruptcy adjudicated in its forum. *See, e.g., In re Enron Corp.*, 317 B.R. 629, 639 (Bankr. S.D.N.Y. 2004). As shown above, Indiana's ties to the Debtor are non-existent or tenuous, at best. On the other hand, Ohio has a significant interest in this Case. The real property is located in Ohio, a large number of creditors, leasehold interests, and litigation matters and personal property assets are based in Ohio.

### (ii)     Convenience of the Parties

32.     As noted by the Court of Appeals for the Second Circuit, "[v]enue is forum limitation imposed for the convenience of the parties." *United States of America v. Laird*, 412 F.2d 16, 20 (2d. Cir. 1969).  Courts considering a motion to transfer venue of a bankruptcy proceeding consider various factors when deciding the convenience of the parties, including the following:

    a.   The proximity of creditors of every kind to the court;

    b.   The proximity of the debtor to the court;

    c.   The proximity of the witnesses necessary to the administration of the estate;

    d.   The location of the assets;

    e.   The economic administration of the estate; and

    f.   The necessity for ancillary administration if liquidation should result.

*In re Enron Corp.*, 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002)(*citing Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.*), 596 F.2d 1239, 1247 (5th Cir. 1979)).  *See also In re Dunmore Homes, Inc.*, 380 B.R. 663, 676 (Bankr. S.D.N.Y. 2008).

33.     As the facts indicate above, all of these factors weigh in favor of transferring the Case to the Ohio Court.  Debtor's petition indicates that the entirety of Debtor's assets are located in Ohio, Debtor's headquarters are located in Ohio, and the major litigation involving the Debtor is being heard in the District Court.  Furthermore, key former employees who may be called upon to testify in this matter or otherwise appear at hearings are likely based out of Debtor's nerve center in Wauseon, Ohio and other currently unnamed creditors are likely located in Ohio.

34.     Moreover, those making the economic decisions affecting the Debtor and the Debtor's estate are located in the Northern District of Ohio.  Many courts believe this is the most important factor because it most directly affects the effective administration of the bankruptcy case.  *See In re Enron Corp.*, 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002)(*citing Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.*), 596 F.2d 1239, 1247 (5th Cir. 1979)).  As the Court is well aware, the vast majority of the decisions that the Debtor will make are financial decisions, and the persons making those decisions are located in Ohio, not Indiana.  Accordingly, this factor weighs heavily in favor of granting this Motion.

35.     Finally, although it is too early in the case to determine whether the Debtor will reorganize or liquidate, if liquidation becomes necessary, the Ohio Court is intimately familiar with the liquidation of dairy farms, and it can manage the process as well as this Court.  Thus, Ohio is closer, by a large margin, to every aspect of the Debtor's chapter 11 case as compared to the Southern District of Indiana.

36.     Transferring the venue of the Debtor's case to Ohio also will alleviate the considerable time and expense that will be incurred by both the Debtor and its creditors if forced to travel across state lines to Indiana.  Additionally, the transfer of this case will promote judicial economy, as the Debtor, its assets and its substantial creditors are all located in Ohio.

37.     In light of the fact that headquarters of the Debtor (in Ohio) and the vast majority of the creditors are all in Ohio, as opposed to Indiana, both the creditors and Debtor will have more efficient access to the proceedings if the case is transferred to the Ohio Court.  Accordingly, the costs to the creditors, the Debtor, and the estate, in terms of both time and money, will be significantly lowered.

## CONCLUSION

38.     The foregoing demonstrates that venue in this district is improper due to the lack of any jurisdictional basis in Indiana.  However, even if the Court finds venue proper, the convenience of the parties and the interest of justice require that the chapter 11 case be transferred to the most appropriate venue, the Northern District of Ohio.

WHEREFORE, the AgStar Entities respectfully request that the Court (i) transfer the Debtor's case to the District Court for the Northern District of Ohio where venue would be appropriate under 28 U.S.C. § 1408 and (ii) grant the AgStar Entities such other and further relief as is just and proper.

Dated: August 10, 2010        Respectfully submitted,

*/s/ Jeffrey A. Brauer*
Jeffrey A. Brauer (OH #0069908) (admitted S.D. Ind)
Nancy A. Valentine (OH# 0069503) (*Pro Hac Vice* to be filed)
Christopher B. Wick (OH# 0073126) (*Pro Hac Vice* to be filed)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio  44114
Telephone:    (216) 621-0150
Facsimile:    (216) 241-2824
E-mail:        jabrauer@hahnlaw.com
               navalentine@hahnlaw.com
               cwick@hahnlaw.com

*Attorneys for the AgStar Entities*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**(INDIANAPOLIS DIVISION)**

| | | |
|---|---|---|
| IN RE: | **:** | Chapter 11 |
| | **:** | |
| CHESTERFIELD DAIRY, LLC, | **:** | Case No. 10-11888-JKC-11 |
| | **:** | |
| Debtor. | **:** | Judge James K. Coachys |

**ORDER GRANTING THE EMERGENCY MOTION**
**OF THE AGSTAR ENTITIES TO TRANSFER VENUE OF THE DEBTOR'S**
**BANKRUPTCY CASE TO THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

This matter is before the Court on *The Emergency Motion of the AgStar Entities to Transfer Venue of the Debtor's Bankruptcy Case to the United States Bankruptcy Court for the Northern District of Ohio* (the "Motion").  Having reviewed the Motion, and record herein, having been advised that notice of the Motion has been provided to the Debtor, Debtor's counsel, and the Office of the United States Trustee, having determined that service of both the Motion and Notice of Hearing thereon were adequate and in compliance with the Bankruptcy Code and all applicable bankruptcy rules, and being otherwise fully advised in the premises, the Court finds that the interest of justice and the convenience of the parties will best be served by

transferring this Case to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1412 to be administered as a bankruptcy case under Title 11 and pursuant to 28 U.S.C. § 1334(a) through (e).  Accordingly, it is

**ORDERED:**

1.       The Motion is GRANTED.

2.       This Case is hereby transferred to the Untied States District Court for the Northern District of Ohio to be administered by the District Court as a bankruptcy case under Title 11 and pursuant to 28 U.S.C. § 1334(a) through (e).

3.       This Order shall not modify or otherwise impact the priorities of allowed claims as they otherwise exist under the Bankruptcy Code and applicable law including, but not limited to, the fact that this Order shall not impact, waive or otherwise prejudice the respective priorities of the claims and interests of the various creditors in this Case.  Further, all orders and other rulings entered in this Case shall remain effective in accordance with their terms, all filings filed in this Case shall be deemed as if said filings were filed in the United States District Court for the Northern District of Ohio, all rights and remedies available to creditors and the debtor in this Case shall remain unaffected and unprejudiced by virtue of the transfer, and the Case shall continue to be governed by and construed under the United States Bankruptcy Code.

4.       The Clerk of the Court shall take whatever steps necessary to expeditiously effect the transfer of this Case directly to the United States District Court for the Northern District of Ohio.

# # #

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the *Emergency Motion of the AgStar Entities to Transfer Venue of the Debtor's Bankruptcy Case to the United States District Court for the Northern District of Ohio* were served upon the parties set forth below on the 10th day of August 2010 by the method indicated:

The following is the list of **parties** who are currently on the list to receive e-mail notice/service for this case and who were served by the Court's electronic noticing system: Parties may access this filing through the Court's system:

- KC Cohen    kc@esoft-legal.com

- Joseph F McGonigal     joe.mcgonigal@usdoj.gov, joe.mcgonigal@usdoj.gov

- U.S. Trustee    ustpregion10.in.ecf@usdoj.gov

The following is the list of **parties** who are **not** on the list to receive e-mail notice/service for this case and who were served by United States Mail, postage prepaid:

**Chesterfield Dairy, LLC**
**1290 Shoop Ave., Ste. 140**
**Wauseon, OH 43567**

**AgStar Financial Services, ACA**
**PO Box 4249**
**Mankato,l MN 56002-4249**

/s /Jeffrey A. Brauer
One of the Attorneys for the AgStar Entities