## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA (INDIANAPOLIS DIVISION)

| | |
|---|---|
| In re | : Case No. 10-11888-JKC-11 |
| | : |
| CHESTERFIELD DAIRY, L.L.C., | : Chapter 11 |
| | : |
| Debtor. | : Judge James K. Coachys |
| | : |
| | : **MOTION OF AGSTAR ENTITIES FOR** |
| | : **IMMEDIATE AND EMERGENCY** |
| | : **RELIEF FROM THE AUTOMATIC** |
| | : **STAY – <u>WITH 30 DAY WAIVER</u>** |

### <u>INTRODUCTION</u>

AgStar Financial Services, FLCA ("<u>FLCA</u>") and AgStar Financial Services, PCA ("<u>PCA</u>" and together with FLCA, the "<u>AgStar Entities</u>" or "<u>Movants</u>"), creditors and parties in interest in the above-captioned case, by and through their undersigned counsel, respectfully move this Court by way of this motion (the "<u>Motion</u>"), pursuant, *inter alia*, to Sections 361 and 362(d)(1) and (2) and (f) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>") and under Rules 4001, 9014 and other rules of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for an order conditioning, modifying or dissolving the automatic stay imposed by section 362 of the Bankruptcy Code to allow the Movants to proceed with the sale of the Property (as defined below) of Debtor Chesterfield Dairy, L.L.C. ("<u>Debtor</u>") that is subject to the perfected, first priority liens and security interests of the AgStar Entities.  From and since September 29, 2009, Debtor and the Property have been the subject of that certain litigation pending in the United States District Court for the Northern District of Ohio, Western Division (the "<u>District Court</u>") in the case styled as *AgStar Financial Services, FLCA, et al. v. Hopewell Dairy LLC, et al.*, Case No. 3:09CV02237 (also involving

Hopewell Dairy LLC and Hopewell Dairy Leasing, LLC, a chapter 11 Debtor in this District[1]) (the "Hopewell/Chesterfield Case").[2]   On September 30, 2009, on an interim basis, and October 13, 2009 on a final basis, the District Court entered that certain Order Appointing Receiver [District Court Docket Nos. 11 and 45] appointing Roach & Associates, LLC (through its agent John Roach) receiver of Debtor's assets.[3]   On July 7, 2010, the District Court entered that certain *Order (1) Approving Bid Procedures; (2) Scheduling Auction; (3) Scheduling Sale Hearing; (4) Approving Form and Manner of Service of Notice of Bid Procedures; And (5) Granting Related Relief* [District Court Docket No. 196] (the "Bid Procedures Order") to, among other things, allow the Receiver sell the Property by public auction to the highest and best bidder pursuant to the provisions of 28 U.S.C. Section 2001.

Movants seek the requested relief herein because, among other reasons, (i) the failure to grant relief from stay will cause irreparable harm to creditors of Debtor; (ii) this chapter 11 filing is in bad faith; and (iii) Debtor (a) cannot provide adequate protection to the AgStar Entities as Debtor has no income; and (b) has no equity in the Property nor any possibility of reorganization.   More specifically, (1) the "dairy business" operated by Debtor have ceased all operations, (2) in accordance with orders of the District Court, the Receiver has liquidated all cattle and equipment previously owned by Debtor and located on the Property, and Debtor has no source for generating any cash flow; (3) the District Court overseeing for almost a year the

---

[1] Contemporaneously with the filing of this Motion, the AgStar Entities have filed similar motions in the chapter 11 bankruptcy cases filed on the same date as this chapter 11 case styled as, *In re Hopewell Dairy Leasing,, LLC,* Case No. 10-11891, *In re Rock Creek Dairy Leasing, LLC,* Case No. 10-11890-JKC-11, *In re Oolman Dairy Leasing LLC,* Case No. 10-11889-JKC-11 (collectively together with the within case, the "Dairy Bankruptcy Cases").

[2] Pursuant to Rule 201 of the Federal Rules of Evidence, the AgStar Entities respectfully request that this Court take judicial notice of the filings made in the District Court in the Hopewell/Chesterfield Case.  Notwithstanding this request, the AgStar Entities have endeavored to file with the Court their Appendix containing substantially all documents pertinent to demonstrate, among other things, Debtor's obligations to the AgStar Entities and the first priority security interest in the Property held by the AgStar Entities.

[3] Contemporaneously with the filing of this Motion, the AgStar Entities have filed that certain *Emergency Motion of Agstar Financial Services, PCA (A) to Excuse the District Court Receiver, Roach & Associates, LLC, from*

equity receivership and foreclosure/replevin action related to the Property has (A) previously entered a *Judgment Entry Decree of Foreclosure* [District Court Doc. No. 185] against Debtor and its non-debtor co-borrowers and all junior lienholders, (B) previously approved and commenced a sale process culminating in a public auction to sell the Property that occurred and was concluded on August 4, 2010, (C) a Successful Bidder and Reserve Bidder (as those terms are defined in the Bid Procedures attached as Exhibit 1 to Exhibit A of the Bid Procedures Order) that have been identified as the winning bidder and back-up bidder at such auction, (D) a hearing to approve the sale of the Property to the Successful Bidder and Reserve Bidder, as may be necessary, previously was scheduled for August 9, 2010, and (E) the inability to obtain approval of the sale of the Property and close the sale of the Property in the next several days will cause irreparable harm to the creditors and parties-in-interest and may cause such sales to be lost; (iv) Debtor cannot provide Movants with adequate protection of their respective interests while the Property securing the indebtedness owed to the AgStar Entities by diminishes in value as, among other reasons, Debtor has no source of income; and (v) Debtor does not have any equity in the Property, which is the subject of first priority liens and security interests in favor of the AgStar Entities, as previously admitted by Debtor and Debtor ***does not have*** any possibility of reorganizing.

In further support of this Motion, the Movants state:

### MEMORANDUM IN SUPPORT
### Jurisdiction, Venue and Basis for Relief

1.      The Court has jurisdiction over this Motion and the matters set forth herein pursuant to 28 U.S.C. §§ 157 and 1334. The contested matter initiated by this Motion is a core proceeding under 28 U.S.C. § 157(b)(2). The venue of this Motion and Debtor's bankruptcy

---

*Compliance with Bankruptcy Code Sections 543(a), (b), and (c) to allow the Receiver to remain in control of*

case **_is not_** proper under 28 U.S.C. §§ 1408 and 1409.[4]  Among other things, sections 105, 361, 362, and 363 of the Bankruptcy Code, Rules 4001, and 9014 of the Bankruptcy Rules and the Local Rules of Bankruptcy Procedure for this Court provide the basis for the relief requested herein.

### BACKGROUND

2.      The Receiver was appointed in the Hopewell/Chesterfield Case on September 30, 2009 on an interim basis and October 13, 2009 on a final basis.  Debtor did not object to the appointment of the Receiver or appeal the Orders appointing the Receiver.    The Hopewell/Chesterfield Case involves, in part, the foreclosure of real property and improvements and fixtures thereon owned by Debtor located at 15710 County Road 14, City of Lyons, County of Fulton, Ohio 43533 (the "Chesterfield Mortgaged Premises"), as more fully described in the Chesterfield Mortgages (as defined below) and the personal property owned by Debtor, as more fully described in the Chesterfield Security Agreements (as defined below) and located at the Chesterfield Mortgaged Premises (the "Dairy Collateral" and together with the Chesterfield Mortgaged Premises, the "Property").

3.      In the Hopewell/Chesterfield Case, the Receiver has sold all of the cows which lived at the Property, leaving the Debtor's Property "dark" or in a non-operating condition.

4.      Similarly, the Receiver has liquidated the equipment, *e.g.*, tractors, skid steers and trucks, comprising a portion of the Dairy Collateral by means of (a) an auction sale on June 12, 2010, or (b) the Receiver returning equipment located at each of the Receivership Properties to

---

Debtor's assets, among other relief pursuant to Section 543(d) of the Bankruptcy Court.
[4] Prior to the filing of this Motion, the AgStar Entities have filed the *Emergency Motion of AgStar Entities to Transfer Venue of the Debtor's Bankruptcy Case to the United States Bankruptcy Court for the Northern District of Ohio* since this Case is not related to or affiliated with the case styled as *In re Union Go-Dairy Leasing, LLC,* Case No. 10-01703-JKC-11 or any other bankruptcy pending in the United States Bankruptcy Court for the Southern District of Indiana and venue is wholly improper.

the supplier, owner or lender that had a purchase money security interest in such equipment or owned such equipment and leased it to one of the dairies.

5.      In the Hopewell/Chesterfield Case, the Receiver has the duty to "Preserve and maintain, and subject to Approval, market and sell, the [Dairy Collateral]; [and] subject to further Court order sell the [Chesterfield Mortgaged Premises]…" (*See*, *e.g*., Hopewell/ Chesterfield Case Receiver Order at ¶ 17(f)).

6.      In the Hopewell/Chesterfield Case, the Receiver is "authorized to do any acts which the Receiver deems appropriate or desirable to protect the security hereof and use such measures, legal or equitable, as the Receiver in consultation with the AgStar Entities, deems appropriate or desirable to preserve, protect, manage, dispose of or otherwise the [Hopewell Mortgaged Premises and Dairy Collateral]." (*See*, *e.g*., Hopewell/Chesterfield Case Receiver Order at ¶ 20).

7.      Pursuant to the Chesterfield Mortgages, and as more specifically described below, the Orders Appointing Receiver and the pleadings in the Hopewell/Chesterfield Case, the AgStar Entities have first priority perfected mortgage liens on the Chesterfield Mortgaged Premises and the AgStar Entities have first priority perfected liens on the Dairy Collateral, except to the extent of certain equipment returned to its owner or to a lender that held a purchase money security interest in such equipment.

8.      On June 23, 2010, the Receiver filed that certain *Receiver's Expedited Motion for Entry of an Order (1) Authorizing Sale of Receivership Property Free and Clear of Liens, Claims and Encumbrances; (2) Approving Bid Procedures with regard to Sale of Receivership Property; (3) Scheduling Consolidated Auction; (4) Scheduling Sale Hearing; and (5) Approving Other Matters Related to the Sale of Receivership Property* and Exhibits thereto [District Court Docket

No. 182] (the "Sale Motion").  Debtor did not file any objection to the Sale Motion despite notice and despite counsel for Debtor being present at the status conference regarding the Sale Motion that occurred on July 6, 2010.

9.      On July 7, 2010, as noted, the District Court entered the Bid Procedures Order. On July 26, 2010, in accordance with the Bid Procedures Order, the Receiver filed that certain *Notice of Stalking Horse Bidder and Accepted Bid for Hopewell Receivership Property* [District Court Docket No. 205], notifying all defendants in the Hopewell/Chesterfield Case and all counsel of record for all defendants, among others of a "Stalking Horse Bidder" or committed purchaser for the Property.  On August 2, 2010, the Receiver received an additional bid for the Property pursuant to the provisions of the Bid Procedures.  On August 4, 2010, the Receiver conducted a public auction of the Property and certain Receivership Properties owned by the Debtors in the other Dairy Bankruptcy Cases.  After competitive bidding, the auction culminated in a Successful Bidder for the Property at $3,000,000.00.  On August 4, 2010, and in accordance with the Bid Procedures, the Receiver filed that certain *Receiver's Notice of Consolidated Auction Results for the Hopewell Receivership Property* [District Court Docket No. 211].  On August 5, 2010, the deadline to object to the sale of the Property passed without any objections being filed, including any objection by the Debtor.  On August 6, 2010, the Receiver uploaded a proposed order [District Court Docket No. 214] to approve the sale of the Property to the Successful Bidder or the Reserve Bidder, if necessary, in advance of the hearing on August 9, 2010, before District Judge Katz, which proposed order included copies of the fully executed Purchase Agreement with such bidder's purchase agreement containing no financing contingencies.

10.     On the eve of confirmation of the sale of the Property, and after substantial time and expense by the Receiver, the AgStar Entities and other parties, Debtor filed this bad faith and skeletal chapter 11 proceeding in the wrong venue.

A.     **JUDGMENT ENTRY DECREE OF FORECLOSURE AND PROMISSORY NOTES/LOAN AGREEMENTS**

11.     On June 24, 2010, this Court entered that certain *Judgment Entry Decree of Foreclosure, Damages and Replevin* [Doc. No. 185] (the "Foreclosure Decree")[5] granting *Plaintiffs' Motion for Partial Summary Judgment* and Exhibits thereto [Doc. No. 164] along with the *Affidavit of Daniel W. Godfrey in Support of Plaintiffs' Motion for Partial Summary Judgment* [Docket No. 165] (the "Affidavit" and collectively, the "SJ Motion") filed on behalf of the AgStar Entities on April 19, 2010.[6]  The Foreclosure Decree granted judgment in favor of the AgStar Entities on Counts Three, Six, and Eight of their Complaint as to Debtor, Johannes Marinus Theodorus van de Kolk, Cornelius Petrus Caspar van de Kolk (collectively, the "Chesterfield Borrowers") and on the Counterclaim of RAM Separation Equipment Company, LLC ("Ram").

12.     The Foreclosure Decree granted judgment in favor of PCA against the Chesterfield Borrowers, jointly and severally, as of August 31, 2009, in an amount not less than $1,739,103.71 (including principal in the amount of $1,688,750.00, and accrued and unpaid interest, including interest at the Default Add-On Rate as defined in the Chesterfield PCA Note (as defined in the SJ Motion), in the amount of $51,762.39, less the escrowed amount of $1,408.68), plus: (i) all costs and charges incurred in the collection or enforcement of the Chesterfield PCA Note, including attorneys' fees and court costs; (ii) continuing and accruing

---

[5] A true and accurate copy of the Foreclosure Decree has been filed contemporaneously herewith and is incorporated herein by reference.

interest at the per annum rate of 7.5463%; and (iii) all other amounts and charges due and owing under the Chesterfield PCA Note. As of July 31, 2010, and after application of certain payments arising from the liquidation of certain Chesterfield Collateral, there remains due and owing in respect of the Chesterfield PCA Note the sum of $1,050,116.11 (including principal in the amount of $1,043,553.64, together with unpaid interest in the amount of $6,562.47) plus: (iv) all costs and charges incurred in the collection or enforcement of the obligations to PCA of the Chesterfield Borrowers, including attorneys' fees and court costs; (v) continuing and accruing interest on the aforesaid principal balance at the per annum rate of 7.5463%; and (vi) all other amounts and charges due and owing under the Chesterfield PCA Note.

13. The Foreclosure Decree also granted a judgment in favor of FLCA against the Chesterfield Borrowers, jointly and severally, as of August 31, 2009, in an amount not less than $6,116,945.07 (including principal in the amount of $5,920,000.00, and accrued and unpaid interest, including interest at the Default Add-On Rate as defined in the Chesterfield FLCA Note (as defined in the SJ Motion), in the amount of $196,945.07), plus: (i) all costs and charges incurred in the collection or enforcement of the Chesterfield FLCA Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 7.5463%; and (iii) all other amounts and charges due and owing under the Chesterfield FLCA Note (as defined in the SJ Motion).

14. The Foreclosure Decree further found that in order to secure payment of funds due and owing under the Chesterfield FLCA Note, Chesterfield executed and delivered to FLCA the Chesterfield FLCA Mortgage, thereby encumbering Chesterfield's interest in the Property as

---

[6] A true and accurate copy of the SJ Motion has been filed contemporaneously herewith and is incorporated herein by reference.

more specifically described in the Chesterfield FLCA Mortgage, a copy of which is attached to the Affidavit as Exhibit 3.

15.     The Foreclosure Decree further found that the Chesterfield FLCA Mortgage was duly and timely filed with the Office of the Recorder of Fulton County, Ohio on July 27, 2006, as Fulton County Instrument No. 200600168204.  The Chesterfield FLCA Mortgage became a valid, first mortgage lien upon the Property, subject only to the liens of Defendant Bev Schlosser, the Treasurer of Fulton County, Ohio (the "Fulton Treasurer") for unpaid real estate taxes.

16.     The Foreclosure Decree further found that in order to secure payment of funds due and owing under the Chesterfield PCA Note, Chesterfield executed and delivered to PCA the Chesterfield PCA Mortgage, thereby encumbering Chesterfield's interest in the Property as more specifically described in the Chesterfield PCA Mortgage, a copy of which is attached to the Affidavit as Exhibit 4.

17.     The Foreclosure Decree further found that the Chesterfield PCA Mortgage was duly and timely filed with the Office of the Recorder of Fulton County, Ohio on July 27, 2006, as Fulton County Instrument No. 200600168205.  Chesterfield PCA Mortgage became a valid, first mortgage lien upon the Property, subject only to the liens of the Fulton Treasurer for unpaid real estate taxes.

18.     The Foreclosure Decree further found that, applying the doctrine of *lis pendens*, the effective date of recordation of the Chesterfield Mortgages (as defined in the SJ Motion) is July 27, 2006, and any and all persons who obtained liens on the Property subsequent to July 27, 2006, whether known or unknown, have received effective and sufficient notice of the Chesterfield Mortgages and, accordingly, any such lien claimants shall have their interests foreclosed and are bound by this decree.

19.     The Foreclosure Decree further found that said conditions in the Chesterfield Mortgages have been broken by, among other reasons, the Chesterfield Borrowers' failure to make all payments due under the Chesterfield Notes (as defined in the SJ Motion). Therefore, the AgStar Entities are entitled to have the equity of redemption of all Defendants in and to said Property foreclosed.

20.     To further secure the amounts due and owing under the Chesterfield Notes (as defined in the SJ Motion), on or about July 26, 2006, Chesterfield executed and delivered to FLCA and PCA those certain Chesterfield Security Agreements (as defined in the SJ Motion) granting to the AgStar Entities security interests in the Collateral, as described more fully in the Chesterfield Security Agreements, copies of which are attached to the Affidavit as Exhibits 6 and 7.

21.     Pursuant to the Chesterfield Security Agreements, the AgStar Entities perfected their respective security interests in the Property by filing UCC-1 Financing Statements on August 1, 2006 and September 11, 2006 with the Ohio Secretary of State as File Nos. OH00105041789 and OH00106456688 in favor of PCA and FLCA, respectively, copies of which are attached to the Affidavit as Exhibits 8 and 9.

22.     The Foreclosure Decree further found that the Chesterfield Borrowers, RAM and Shell Western E & P, Inc. (collectively, the "Chesterfield Real Property Defendants") claim some right, title, interest or lien upon the Property as set forth in their respective pleadings filed herein, but that any right, title, interest, claim or lien that the Chesterfield Real Property Defendants may have is subordinate to the liens of the AgStar Entities.

23.    In the Foreclosure Decree, the Court ordered that the Property should be sold by the Receiver free and clear of all liens, claims, interests and encumbrances, and that the proceeds of such sale shall be applied to the payment of liens in their respective order of priority.

24.    Finally, the Foreclosure Decree granted Plaintiffs an Order of Permanent Possession in the Property.

## B.    BASIS FOR RECEIVER SALE AND IRREPARABLE HARM

25.    The highest and best use for the Property, and possibly the only viable use for the Property, is as a fully functioning dairy farm.  (Declaration of John Roach [District Court Docket No. 186] ("Roach Dec.") at ¶ 6.)  Any purchaser interested in the Property is thus likely to repopulate the dairies quickly and to reestablish functioning dairy operations.  (Id.)  It is the understanding of the AgStar Entities that the Successful Bidder and Reserve Bidder for the Property intend to immediately repopulate the dairies and to reestablish functioning dairy operations.  To operate these dairies successfully, purchasers must have access to large quantities of field corn silage at appropriate prices.  (Roach Dec. at ¶ 7.)  Generally, crop farmers arrange for the sale of silage at or before the time of planting.  They do so either by (a) contracting with dairies (or others) for specific quantities of silage or (b) selling their crops to the as dried shelled corn.  (Roach Dec. at ¶ 8.)  As indicated, these sale arrangements are typically made in the spring, prior to planting, and long before the date of harvest.  (Roach Dec. at ¶ 9.)  The Successful Bidder and Reserve Bidder for the Property and the similarly situated winning bidders for the other Receivership Properties, however, were not and currently are not in a position to make these arrangements because they now do not know when or whether they will be able to consummate their purchase of the Property.  (Id.)

26.    Field corn silage is generally harvested in a relatively short window of time between the first and the fifteenth of August of each year.  (Roach Dec. at ¶ 10.)  The harvest

sometimes occurs a bit earlier, and sometimes a bit later, depending on weather and the moisture content of the corn plants. (Id.) When the crops are harvested, however, they must be chopped and sold as whole-plant field corn silage or, absent silage purchasers, the corn must be removed, dried, and sold as shelled corn. (Id.) Very rarely do crop farmers chop and store whole plant field corn silage for resale. (Roach Dec. at ¶ 11.) Whole plant field corn silage is generally available in plentiful quantities up to the time of harvest. (Roach Dec. at ¶ 12.) Crop farmers often plant sufficient quantities of corn to exceed their silage supply obligations. (Id.) The remaining crops, as indicated, are sold as dried shelled corn. A dairy operator interested in acquiring additional silage supplies can generally purchase silage that a farmer would otherwise harvest and sell as shelled corn. (Id.) To do this, however, the dairy farmer must act at or before the time of the corn silage harvest. (Id.) Once the window for a silage harvest has passed the remaining corn must be harvested as dried shelled corn. (Id.)

27.     If the process of selling Property is not completed by August 20, 2010, it is likely that the Successful Bidder or Reserve Bidder will be unable to access sufficient quantities of silage to operate, or, if such silage is available, will have to pay significantly above market prices to acquire it. (Roach Dec. at ¶ 13.) The Successful Bidder and Reserve Bidder for the Property will certainly be aware of this problem and will walk away from the sale and/or will adjust the purchase price downward depending upon when such Successful Bidder or Reserve Bidder obtains control of the Property. (Id.)

28.     If the sale process is not concluded in time for the Successful Bidder to acquire adequate silage for the coming winter, such Successful Bidder basically has three options: It can buy the Property and leave the dairy dark until silage is again available at reasonable prices and quantities at the time of the 2011 harvest, it can throw itself upon the mercy of the market and to

try to locate previously ensiled corn silage wherever it can be found or it can risk buying feed at substantial cost that it would not need and/or cannot pay for if the sale of the Property is not promptly consummated.  (Roach Dec. at ¶ 14.)  None of these options are attractive and may cause rescission of the Successful Bid and/or Reserve Bid.  (Id.)  As such, it is imperative that the asset sale process ordered by the District Court be completed in the timeframe contemplated by the winning bidders in the next several days.  (Roach Dec. at ¶ 17.)

29.    Moreover, arrangements to empty and maintain manure lagoons are usually made with feed providers in conjunction with feed purchases (i.e., the manure is applied the same acreage on which the silage is grown); further lagoon maintenance and emptying will have to occur in September 2010 so that the Property can remain in compliance with certain regulatory requirements.  (Roach Dec. at ¶ 15.)  To the extent the Receiver is charged with making arrangements to further empty manure lagoons and effect other modifications to those lagoons, the ability to make appropriate arrangements will be difficult and the costs will be substantial. (Id.)  In addition, the Receiver would have to winterize and maintain the dark Property and the other dark Receivership Properties further increasing costs and reducing recovery.   (Id.) Moreover, this Debtor lacks any funds to pay for lagoon maintenance.[7]

30.    As such, and to avoid losing the sale of the Property and the window of opportunity within which to maximize value on the sale of the Property and to avoid incurring significant additional expenses further impacting recovery in the Hopewell/Chesterfield Case for the AgStar Entities and other creditors, the sale of the Property must be approved and closed in August 2010.

---

[7] During the pendency of the Hopewell/Chesterfield Case and due to the dairy farm operations generating negative cash flow throughout the Hopewell/Chesterfield Case, the AgStar Entities had to advance funds to the Receiver for, among other things, lagoon maintenance that had been ignored by Debtor, Debtor Hopewell Dairy Leasing, LLC and Hopewell Dairy, LLC prior to the Receiver's appointment.

## RELIEF REQUESTED

31.    The AgStar Entities respectfully request the entry of an order (a) granting the AgStar Entities immediate and emergency relief from the automatic stay imposed by Bankruptcy Code section 362(a) and (b) permitting the Receiver (i) to continue to preserve and protect the Property and (ii) to proceed to obtain confirmation of the sale of the Property from the District Court and to close the sale of the Property.

## LAW AND ARGUMENT

**A.    THE AGSTAR ENTITIES ARE ENTITLED TO IMMEDIATE AND EMERGENCY RELIEF FROM THE AUTOMATIC STAY PURSUANT TO BANKRUPTCY CODE SECTION 362(F) TO AVOID IRREPARABLE DAMAGE TO THE PROPERTY AND TO ALLOW THE SALE TO TIMELY CLOSE WITHOUT MODIFICATION.**

32.    Bankruptcy Code Section 362(f) provides, in relevant part, that "the court … shall grant such relief from stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing …." 11 U.S.C. § 362(f).

33.    The AgStar Entities acknowledge that an order of the Bankruptcy Court granting relief from the automatic stay on an emergency basis pursuant to Section 362(f) could be classified as extraordinary relief.[8] *Gen. Elec. Credit Corp.v. Montgomery Mall Ltd. P'Ship (In re Montgomery Mall Ltd. P'Ship),* 704 F. 2d 1173, 1176 (10th Cir. 1983) (holding that irreparable harm would ensue where debtor was unable to pay its expenses and that stay relief under Section 362(f) was properly granted).

---

[8] The AgStar Entities affirmatively waive any and all time periods in place relating to entry of an order granting relief from the automatic stay, including without limitation Section 362(e) of the Bankruptcy Code. Time is absolutely of the essence as the AgStar Entities, and Debtor's estate, risk losing the sale(s) of the Property if delay is created, substantively or procedurally.

34.     Nevertheless, the AgStar Entities state that if ever a situation existed where exigent relief was needed to protect an asset for an entity having interest in the property to avoid irreparable harm, this is that instance.

35.     As stated by the Receiver, a predominantly neutral party, installed by the District Court, the sale of the Property must close on an expedited basis to permit the Successful Bidder to receive the benefit of its bargain.  (August 9, 2010 Declaration of John M. Roach, hereinafter the "Second Roach Dec." at ¶ 35.)  Absent the sale of the Property, the Successful Bidder will lose opportunities, which will harm it, and almost certainly cause the Successful Bidder to demand a downward revision in purchase price, if not termination of the Purchase Agreement, directly harming the AgStar Entities and Debtor' estates.

36.     It is without dispute that the Property is not in use by Debtor.  (Second Roach Dec. at ¶ 28.)  Substantially all personal property and livestock necessary to operate the Property as a working dairy have been liquidated, monetized and sold.  (Second Roach Dec. at ¶¶ 22-28.) No reasonable prospect exists for Debtor to generate revenue to be used to pay expenses for, among other things, operations, maintenance and insurance.  Reorganization is simply not a realistic option.  Relief from the automatic stay should be granted to protect the AgStar Entities from irreparable harm.[9] *In re Burton*, 195 B.R. 588 (Bankr. W.D.N.Y. 1996) (holding that it is fair and equitable to require a debtor to demonstrate with certainty the ability to reorganize in order to withstand scrutiny under Section 362(f)).

37.     As will be demonstrated further herein, Debtor has neither justifiable reason to enter Chapter 11 nor reasonable expectation of reorganization (or even to pay its expenses while

---

[9] The AgStar Entities do not concede that Debtor would, even if it had the resources and had the opportunity would properly spend resources on its proper expenses in any event.

in Chapter 11).  Irreparable harm will come to the AgStar Entities, among others, unless the stay is lifted to allow the Property to be sold by the Receiver as ordered by the District Court.

**B.**  **CAUSE EXISTS TO GRANT THE AGSTAR ENTITIES IMMEDIATE AND EMERGENCY RELIEF FROM THE AUTOMATIC STAY**

38.  Bankruptcy Code Section 362(d)(1) provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, including lack of adequate protection."  11 U.S.C. § 362(d)(1).

39.  Because, among other things, (i) Debtor filed its Chapter 11 case in bad faith; (ii) Debtor has absolutely no income or operations and therefore is wholly unable to adequately protect the interests of the AgStar Entities; and (iii) the Property was sold at Auction establishing the highest and best price for the Property which is for less than the amounts Debtor owes to the AgStar Entities, cause exists pursuant to Section 362(d)(1) of the Bankruptcy Code for the AgStar Entities to be granted immediate and emergency relief from the automatic stay to complete the sale of the Property.

**A.**  **THE AGSTAR ENTITIES ARE ENTITLED TO RELIEF FROM THE AUTOMATIC STAY PURSUANT TO BANKRUPTCY CODE SECTION 362(D)(1) BECAUSE DEBTOR CANNOT ESTABLISH AND/OR PROVE THAT ITS CHAPTER 11 FILING WAS MADE IN GOOD FAITH**

40.  Simply, Debtor does not have any remaining operations and, other than delay and spite, Debtor cannot articulate a single viable reason that this Chapter 11 case was filed.  Without viable rationale, Debtor's filing for Chapter 11 was made in bad faith, and accordingly relief from stay is appropriate.  *See, e.g. Laguna Assoc. Ltd. P'ship v. Aetna Cas. & Surety Co. (In re. Laguna Assoc. Ltd. P'ship)*, 30 F. 3d 734, 737 (lack of good faith in filing Chapter 11

demonstrates cause for lifting stay pursuant to Section 362(d)(1) to allow creditor to pursue foreclosure rights); *In re Grieshop*, 63 B.R. 657, 663 (N.D. Ind. 1986); *In re Castleton Assoc. Ltd. P'ship*, 109 B.R. 347, 351 (S.D. Ind. 1989)(applying *Grieshop* factors to find bad faith and dismiss Chapter 11 case); *Carolin Corp. v. Miller*, 886 F. 2d 793, 699 (4th Cir. 1989) (good faith filing analysis is appropriate for determining whether stay relief should be granted).

     41.    When evaluating the actions of a Debtor for good faith, Courts in the Seventh Circuit, and nationally, have embraced the balancing test enumerated in *Grieshop*, to determine whether a debtor has acted in good faith and whether stay relief is warranted for a debtor acting in bad faith.[10]  *Grieshop*, 63 B.R. at 663.  The *Grieshop* factors, along with application of them to the facts of the instant case are as follows (with application factors in bold supporting the finding that the Chapter 11 case was filed in bad faith):

| **Grieshop Factor** | **Application In Instant Case** |
|---|---|
| (1) Debtor has few or no unsecured creditors. | **(1) Debtor has had no operations since substantially all Debtor's personal property was liquidated. (Second Roach Dec. ¶28.). Moreover, as of August 31, 2009, Debtor owes the AgStar Entities  an amount of not less $6,116,945.07 on the FLCA Note and, as of July 31, 2010, an amount of not less than $1,050,116.11 on the PCA Note while the auction of the Property yielded a purchase price of $3,000,000.00, significantly less than what is owed by Debtor, leaving no recovery for unsecured creditors.** |
| (2) Debtor has filed previous Bankruptcy petition. | (2) Debtor has not filed a previous bankruptcy petition. |
| (3) Prepetition conduct of Debtor has been improper. | **(3) Debtor defaulted on payments on the Chesterfield Notes, which is affirmed in the Foreclosure Decree.** |

---

[10] Notably, Courts nationwide use the same, or similar, factors in determining whether dismissal of a case is warranted when a debtor has filed its case in bad faith.

(4) The Petition effectively allows Debtor to evade Court Orders.

(4) **Debtor's petition has a primary purpose that is to avoid entry of any orders affirming the proper and time-sensitive sales of the Property (Second Roach Dec. ¶¶ 34-38.)**

(5) There are few debts to non-moving creditors.

(5) **Debtor has had no operations since substantially all Debtor's personal property was liquidated. (Second Roach Dec. ¶28.). Moreover, as of August 31, 2009, Debtor owes the AgStar Entities an amount of not less $6,116,945.07 on the FLCA Note and, as of July 31, 2010, an amount of not less than $1,050,116.11 on the PCA Note while the auction of the Property yielded a purchase price of $3,000,000.00, significantly less than what is owed by Debtor, leaving no recovery for unsecured creditors.**

(6) The petition was filed on the eve of foreclosure.

(6) **The petition was filed on the eve of the sale order being entered, one step from the closing of the sale of the Property.**

(7) The foreclosed property is the sole or major asset of the Debtor.

(7) **The Property is the sole remaining or sole remaining significant asset of Debtor.**

(8) The Debtor has no ongoing business or employees.

(8) **Debtor has had no operations since substantially all Debtor's personal property was liquidated. (Second Roach Dec. ¶28.)**

(9) There is no possibility of reorganization.

(9) **Debtor has no ability to generate revenue without operations for it. (Second Roach Dec. ¶28.) Moreover, the auction held by Receiver established the fair market value of the Property, at less than the amounts owed to the AgStar Entities. There is no possibility of reorganization.**

(10) The Debtor's income is not sufficient to operate.

(10) **Debtor has no ability to generate income without operations. (Second Roach Dec. ¶28.)**

(11) There was no pressure from non-moving creditors.

(11) **To the best of the knowledge of the AgStar Entities, no other creditors moved or encouraged Debtor to enter Chapter 11. In fact, despite notice and knowledge of the Sale Motion, no objection or comment to the Sale Motion was submitted, including by Debtor.**

|  | **(Second Roach Dec. ¶31.)  Finally, and as set forth in the Foreclosure Decree, all interests of other creditors in the Property have been foreclosed and a permanent order of possession granted to the AgStar Entities.** |
|---|---|
| (12)  Reorganization essentially involves resolution of a two-party dispute. | (12)  **In the instant case, all that remains to conclude Debtor's estate is the sale and monetization of the Property and distribution of net proceeds to the AgStar Entities.  Debtor and the AgStar Entities are the only two parties involved.  (Second Roach Dec. ¶39.)** |
| (13)  A corporate debtor was formed and received title to major assets immediately prior to the petition being filed. | (13)  This factor is not applicable. |
| (14)  Debtor filed Chapter 11 solely to create the automatic stay. | (14)  **The AgStar Entities assert that the automatic stay is the only possible reason Debtor could have for its filing**. |

42.     The *Greishop* factors weigh overwhelmingly in favor of a determination that Debtor filed its Chapter 11 cases in bad faith and that the AgStar Entities are entitled to immediate and emergency relief from the automatic stay.

> **B.     THE AGSTAR ENTITIES ARE ENTITLED TO RELIEF FROM THE AUTOMATIC STAY PURSUANT TO BANKRUPTCY CODE SECTION 362(d)(1) BECAUSE DEBTOR CANNOT ADEQUATELY PROTECT INTERESTS OF THE AGSTAR ENTITIES.**

43.     Adequate protection can be provided to the AgStar Entities only by granting them the benefit of their bargain with Debtor.  "[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (quoting *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)).  *See also In re Republic Techs. Int'l, L.L.C.*, 267 B.R. 548, 554 (Bankr. N.D. Ohio 2001) (holding that a creditor is entitled to that amount of adequate protection which would enable it to receive the benefit of its bargain); *In re Hart Ski Mfg. Co.,*

*Inc.*, 9 B.R. 397, 400 (Bankr. D. Minn. 1981) ("The secured creditor is entitled to the indubitable equivalent or full benefit of its bargain.  This is the goal of adequate protection and the provisions of §§ 361, 362, 363, and 364"); *Sharon Steel Corp. v. Citibank, N.A.* (*In re Sharon Steel Corp.*), 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993); *In re Raymond,* 99 B.R. 819, 821 (Bankr. S.D. Ohio 1989).

44.     Debtor has no income and no reasonable prospect to generate income from which to adequately protect the AgStar Entities and final judgment has been entered against Debtor in the District Court.  Moreover, failure to take advantage of the sale to the Successful Bidder will result in immediate and irreversible diminution of value in the Property.

45.     Absent the sale of the Property to the Successful Bidder (for the established market value), the amount and value of the Property will continue to suffer diminution, particularly without any ability for Debtor to make adequate payments to the AgStar Entities to protect them from such diminution in amount or value.

46.     For the foregoing reasons, and pursuant to Bankruptcy Code Section 362(d)(1), the AgStar Entities are entitled to relief from the automatic stay for cause due to the lack of adequate protection of their interests.

    **C.**    **THE AGSTAR ENTITIES ARE ENTITLED TO RELIEF FROM THE AUTOMATIC STAY PURSUANT TO BANKRUPTCY CODE SECTION 362(D)(2) BECAUSE DEBTOR HAS CONCEDED IT HAS NO EQUITY IN THE PROPERTY AND CANNOT ESTABLISH THAT DEBTOR HAS A REASONABLE POSSIBILITY OF EFFECTIVELY REORGANIZING.**

47.     The AgStar Entities are entitled to relief from the automatic stay pursuant to Bankruptcy Code Section 362(d)(2).  Section 362(d)(2) provides that, with respect to the automatic stay of acts against estate property, the Court shall terminate, annul, modify or condition such stay if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization."  11 U.S.C. § 362(d)(2).

48.     To make their *prima facie* case under Section 362(d)(2), the AgStar Entities have only the burden to establish that Debtor lacks equity in the property, *i.e.,* the secured debt owed to the AgStar Entities exceeds the value of the Property.  *See* 11 U.S.C. § 362(g).

49.     The results of the Auction clearly establish that Debtor lacks equity in the property.  The Auction established a market value (the price that a buyer in good faith would pay for the property) for the Property of $3,000,000.  It is indisputable that the AgStar Entities are owed in excess of $6,167,000 by Debtor.

50.     Debtor's debts to the AgStar Entities significantly exceeds the established value of the Property.  Debtor has no equity in the Property.

51.     Once the AgStar Entities establish the lack of equity, the burden shifts to Debtor to establish that there is a "reasonable possibility of a successful reorganization within a reasonable time."  *See United Sav. Ass'n. of Texas v. Timbers of Inwood Forest Assocs., Ltd.* 484 U.S. 365, 376, 108 S.Ct. 626 (1988); 11 U.S.C. § 362(g).  In order to satisfy its burden of proof, at a minimum, a debtor must provide the court with a broad outline of how it intends to employ the rehabilitative mechanisms of the Bankruptcy Code to effectuate a reorganization within a reasonable time period.  *In re Planned Sys., Inc.,* 78 B.R. 852, 866 (Bankr. S.D. Ohio 1987) (*quoting In re Dublin Prop.,* 12 B.R. 77, 81 (Bankr. E.D. Pa. 1981)).  Debtor cannot possibly satisfy this burden of proof since it has no income nor any realistic expectation of an income source.

52.     "While a debtor need not show that it has proposed a plan which will be deemed acceptable by its creditors, it must demonstrate a reasonable probability that it will be able to propose a plan for a successful reorganization within a reasonable time.  The debtor need not show that it has actually proposed a plan which is acceptable to its creditors . . . .  The debtor

need only demonstrate a reasonable probability that it will be able to propose a plan for a successful reorganization within a reasonable time . . . . A reasonable probability cannot be grounded solely on speculation, however, and a 'mere financial pipe dream' is insufficient to meet the requirements of § 362(d)(2)." *In re Planned Sys., Inc.,* 78 B.R. 852, 866 (Bankr. S.D. Ohio 1987) (*quoting In re Dublin Prop.,* 12 B.R. 77, 81 (Bankr. E.D. Pa. 1981)).

53.     The Property also is not necessary for an effective reorganization.  Although Debtor aspires to be a debtor-in-possession, several facts show that a reorganization is impossible.  First, Debtor has no income source.  Second, Debtor has no operations or assets from which to generate income.  All of these facts establish how reorganization is not a reasonable aspiration of Debtor.  If the Property is, in fact, necessary to Debtor's reorganization then certainly Debtor would have complied with the most basic obligations under the Notes.

54.     In order for Property to be necessary for an effective reorganization, reorganization must be within reasonable prospect. *See United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.* 484 U.S. 365, 376, 108 S.Ct. 626 (1988).  In this case, Debtor has significantly diminished the amount and value of the Property cannot generate sufficient income to pay the AgStar Entities.  Further, Debtor's business operations have long since ceased and prior to same Debtor's cash flow was negative.  As a result, Debtor does not have the income or property necessary to reorganize and pay the debt to the AgStar Entities.  Thus, AgStar Entities have demonstrated that the elements of 11 U.S.C. § 362(d)(2) are met and that the automatic stay should be lifted as to the Property. *See In re Maude H. Henderson and Daniel S. Henderson, IV Irrevocable Trust fbo William M. Worthy, III*, 2008 Bankr. LEXIS 2023, *15 (Bankr. D.S.C. May 7, 2008) (Court held that relief from the automatic stay was

appropriate pursuant to 11 U.S.C. § 362(d)(2) because the prospect of an effective reorganization was unlikely).

55.    Debtor and its principals may have a dream to hold on to the Property, but Debtor has shown no sign that reorganization in the approximately 11 months since the Hopewell/Chesterfield Case was filed and the 18 months since the Chesterfield Notes have been in default, within the auspices of the Bankruptcy Code is possible.  Mere hopes and dreams do not constitute the ability to effectively reorganize.

56.    Based on the foregoing, AgStar Entities are entitled to relief from the automatic stay for cause because Debtor lacks equity in the Property and the Property is not necessary for an effective reorganization.

## **RESERVATION OF RIGHTS**

57.    AgStar Entities reserve their right to amend and/or supplement this Motion and/or to file subsequent motions seeking similar relief on alternative grounds as they deem necessary under the facts and circumstances of this case.  Notwithstanding the filing of this Motion, the AgStar Entities in no way consents to venue or waives its rights to challenge venue in this case.

WHEREFORE, AgStar Entities pray for an Order from the Court granting AgStar Entities immediate and emergency relief from the automatic stay of § 362 of the Bankruptcy Code to permit Movants to proceed with any and all remedies available to them in respect of the Property and for such other and further relief to which the AgStar Entities may be entitled.


[REMAINDER OF PAGE IS INTENTIONALLY LEFT BLANK]

Respectfully submitted,

*/s/ Jeffrey A.Brauer*
Lee D. Powar (Ohio Bar No. 0033679)
*(Pro Hac Vice to be filed)*
Jeffrey A. Brauer (Ohio Bar No. 0069908)
(admitted S.D. Ind.)
Nancy A. Valentine (Ohio Bar No. 0069503)
*(Pro Hac Vice to be filed)*
Christopher B. Wick (Ohio Bar No. 0073126)
*(Pro Hac Vice to be filed)*
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio  44114
Telephone:    (216) 621-0150
Facsimile:    (216) 241-2824
E-mail:        ldpowar@hahnlaw.com
                jabrauer@hahnlaw.com
                navalentine@hahnlaw.com
                cwick@hahnlaw.com

*Attorneys for the AgStar Entities*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 10, 2010, copies of this *Motion of AgStar Entities for Immediate and Emergency Relief from the Automatic Stay – WITH 30 DAY WAIVER*  has been served upon each of the parties indicated on the attached Service List by regular United States mail, postage prepaid, or, if applicable by ECF.

/s/ *Jeffrey A. Brauer*
*One of the Attorneys for the AgStar Entities*

## SERVICE LIST

The following is the list of **parties** who are currently on the list to receive e-mail notice/service for this case and who were served by the Court's electronic noticing system:  Parties may access this filing through the Court's system:

- Jeffrey A Brauer    jabrauer@hahnlaw.com, hlpcr@hahnlaw.com;navalentine@hahnlaw.com;cwick@hahnlaw.com;ldpowar@hahnlaw.com;eladky@hahnlaw.com

- KC Cohen    kc@esoft-legal.com

- Stephen L. Fink    sfink@btlaw.com, tbsmith@btlaw.com

- Joseph F McGonigal    joe.mcgonigal@usdoj.gov, joe.mcgonigal@usdoj.gov

- U.S. Trustee    ustpregion10.in.ecf@usdoj.gov

The following is the list of **parties** who are **not** on the list to receive e-mail notice/service for this case and who were served by United States Mail, postage prepaid:

**Chesterfield Dairy, LLC**
**1290 Shoop Ave., Ste. 140**
**Wauseon, OH 43567**

**AgStar Financial Services, ACA**
**PO Box 4249**
**Mankato, MN 56002-4249**

**The following parties were served by United States Mail, postage prepaid::**

HOPEWELL DAIRY, LLC
c/o CSC-Lawyers Incorporating Service
(Corporation Service Company), Statutory
Agent
50 West Broad Street, Suite 1800
Columbus, Ohio  43215

James R. Knepp, II
Robison, Curphey & O'Connell – Toledo
9th Floor
Four Seagate
Toledo, OH 43604

HOPEWELL DAIRY LEASING LLC
c/o CSC-Lawyers Incorporating Service
(Corporation Service Company), Statutory
Agent
50 West Broad Street, Suite 1800
Columbus, Ohio  43215

Amy B. Ikerd
Office of the Prosecuting Attorney – Mercer
County
119 North Walnut Street
Celina, OH 45822

MIDWEST DAIRY INVESTMENTS, LLC
c/o Michael S. Messenger, Statutory Agent
Four Seagate, 9th Floor
Toledo,  Ohio  43604

Jeremy M. Campana
Thompson Hine – Cleveland
3900 Key Tower
127 Public Square
Cleveland, OH 44114

VREBA-HOFF DAIRY DEVELOPMENT,
LLC
1290 North Shoop Avenue, Suite 140
Wauseon, Ohio 43567

James E. Burke
Christy M. Nageleisen-Blades
Keating, Muething & Klekamp
1400 Provident Tower
One East Fourth Street
Cincinnati, OH 45202

DORIS RUTSCHILLING, MERCER
COUNTY TREASURER
101 North Main Street
Celina, OH 45822

John J. Hunter, Jr.
Hunter & Schank
One Canton Square
1700 Canton Avenue
Toledo, OH 43624

FARM CREDIT SERVICES OF MID-
AMERICA, PCA
P.O. Box 34390
Louisville, KY 40232

Jeffrey J. Perkins
Joseph C. Schlageter
John J. Schlageter, Jr.
Shindler, Neff, Holmes & Schlageter
1200 Edison Plaza
300 Madison Avenue
Toledo, OH 43604

CATERPILLAR FINANCIAL SERVICES
CORPORATION
c/o CT Corporation System, Statutory Agent

Scott A. Haselman
Office of the Prosecuting Attorney – Fulton
County

1300 East Ninth Street
Cleveland, OH 44114

DELAVAL, INC.
c/o CT Corporation System, Statutory Agent
1300 E. 9th Street, Suite 1010
Cleveland, OH 44114

AgCHOICE FARM CREDIT, ACA
109 Farm Credit Drive
Chambersburg, PA 17201

CHESTERFIELD DAIRY, L.L.C. aka
Chesterfield Dairy, LLC
c/o Harm Vande Kolk, Statutory Agent
9160 Dover Drive
Wauseon, OH 43567-9211

JOHANNES MARINUS THEODORUS VAN
DE KOLK
15710 County Road 14
Lyons, OH  43533

CORNELIS PETRUS CASPAR VAN DE
KOLK
15710 County Road 14
Lyons, Ohio 43533

RAM SEPARATION EQUIPMENT
COMPANY, LLC
c/o Kevin P. Braig, Statutory Agent
1100 Courthouse Plaza, S.W.
10 N. Ludlow Street
Dayton, OH 45402

123 Courthouse Plaza
Wauseon, OH 43567

Kevin P. Braig
Dinsmore & Shohl – Dayton
Ste. 1300
One Dayton Centre
One South Main Street
Dayton, OH 45402

Michael C. Jones
762 North Williams Street
PO Box 274
Paulding, OH 45879

Donald L. Scott
17713 State Road 101
Monroeville, IN 46774

BEV SCHLOSSER, FULTON COUNTY
TREASURER
152 S. Fulton Street
Wauseon, Ohio 43567,

c/o John M. Roach
Roach & Associates, LLC, Receiver
856 North Main Street
Seymour, WI 54165

**The following parties, were served by e-mail:**

| Last Name | First Name | Email |
|---|---|---|
| Adams | Anthony | adamsa-wayfarm@bright.net |
| Andreas | Matt | mandreas15@hotmail.com |
| Bowman | Bennie | bennie@bowmanpoultry.com |
| Bowman | Jennifer | jbcspa@gmail.com |
| Bowman | Ralph | rbowman@e-farmcredit.com |
| Bowman | Scott | scott@builtbyhamilton.com |
| Bowman | Trent | tjbow@moorelandisp.net |
| Cooper | Robert A | racooper@hahnlaw.com |
| Cross | Melissa | Melissa.Cross@agstar.com |
| Doezema | James | JDoezema@fosterswift.com |
| Dotson | Carina | cdotson@hahnlaw.com |
| Dunlap | David | david.dunlap@himco.com |
| Eckerle | Stephanie | seckerle@psrb.com |
| Fiechter | Don | dfiechterfam@onlyinternet.net |
| Frauhiger | Krent | krentandliz@hotmail.com |
| Gallup | Laura | gallup@ogdentel.net |
| Gallup | Gary | statelinefarms@metalink.net |
| Geiger | Rachel | roachassociates@new.rr.com |
| Gerrits | Brian | brianlgerrits@hotmail.com |
| Godfrey | Dan | Dan.Godfrey@agstar.com |
| Graft | Fred | fredgraft@aol.com |
| Grosdidier | Gary | gary.grosdidier@myfcsfinancial.com |
| Hackett | Michael | mellifont@eircom.net |
| Hardy | Gregg | ghardy@tc3net.com |
| Harmeyer | Michael | mdharm@agrimail.net |
| Hartfiel | Martha | mhartfiel@matrixassociates.com |
| Homan | Roger | roger@homaninc.com |
| Janzen | Todd | tjanzen@psrb.com |
| Klein | Dennis | dklein@agribussol.com |
| Kling | Michael P. | mpkling@varnumlaw.com |
| LintVedt | Gary | glintvedt@yahoo.com |
| Lucci | John Paul | jlucci@hahnlaw.com |
| Mary | Ryan | miryan@varnumlaw.com |
| McNamara | Tim | Tim.McNamara@agstar.com |
| Nobel | Rob | robnobel9@hotmail.com |
| O'Donnell | Eddie | irishacresdairy@earthlink.net |
| Oesch | Matthew | matthew.oesch@lookoutridgeconsulting.com |
| Oliver | Joe | Joe.Oliver@agstar.com |
| Richards | Kathrin | kerichards@varnumlaw.com |
| Rutledge | James | jrutledge@bricker.com |

| Last Name | First Name | Email |
|-----------|-----------|-------|
| Schilderink | Tonnie | tschilderink@paulding-net.com |
| Smith | Steve | smithsbs84@hotmail.com |
| Spitzley | Benjamin | benjamin.spitzley@greenstonefcs.com |
| Squire | Al | alsquireswd@yahoo.com |
| Surber | John | surber@erinet.com |
| Trott | Merideth | trott@dinslaw.com |
| Valentine | Nancy | navalentine@hahnlaw.com |
| van de Heijning | Mark | reyskens@metalink.net |
| van Raay | Ted | vanraaydairy@agristar.net |
| Webster | Ned | ewebster1027@hotmail.com |
| Yoder | Eric | ericyoder@renovationsincbywagler.com |
| Zeedyk IV | Roger | rzeedyk4@defnet.com |

- **Kevin P. Braig**
  kevin.braig@dinslaw.com

- **James E. Burke**
  jburke@kmklaw.com,cnageleisenblades@kmklaw.com,lrecord@kmklaw.com

- **Jeremy M. Campana**
  jeremy.campana@thompsonhine.com

- **Timothy E. Eagle**
  teeagle@varnumlaw.com

- **James H. Gordon**
  jgordon@rrcol.com

- **Scott A. Haselman**
  shaselman@fultoncountyoh.com

- **Craig W. Horn**
  crahor@bkf-law.com,termie@bkf-law.com

- **John J. Hunter, Jr.**
  jrhunter@hunterschank.com,tgrenier@hunterschank.com,jrhunter@wcnet.org

- **Amy B. Ikerd**
  amy.ikerd@mercercountyohio.org

- **Michael C. Jones**
  black99@bright.net

- **James R. Knepp , II**
  jknepp@rcolaw.com

- **Samuel N. Lillard**
  slillard@mwncmh.com

- **Michael S. McElwee**
  msmcelwee@varnumlaw.com,miryan@varnumlaw.com,mmcarlson@varnumlaw.com

- **Christy M. Nageleisen-Blades**
  cnageleisen@kmklaw.com,ccreech@kmklaw.com

- **Mark A. Ozimek**
  mozimek@rcolaw.com

- **Jeffrey J. Perkins**
  jperkins@snhslaw.com,mtaylor@snhslaw.com

- **Lee D. Powar**
  ldpowar@hahnlaw.com,hlpcr@hahnlaw.com

- **Joseph C. Schlageter**
  schlagjc@snhslaw.com

- **Nancy A. Valentine**
  navalentine@hahnlaw.com,hlpcr@hahnlaw.com

- **Lucas C. Ward**
  lward@ag.state.oh.us

- **Christopher B. Wick**
  cwick@hahnlaw.com

- **Jeffrey A. Yeager**
  jyeager@hahnlaw.com,kessex@hahnlaw.com,jbeard@hahnlaw.com

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**(INDIANAPOLIS DIVISION)**

| | | |
|---|---|---|
| IN RE: | **:** | Chapter 11 |
| | **:** | |
| CHESTERFIELD DAIRY, LLC, | **:** | Case No. 10-11888-JKC-11 |
| | **:** | |
| Debtor. | **:** | Judge James K. Coachys |

**ORDER GRANTING THE MOTION OF THE AGSTAR ENTITIES**
**FOR IMMEDIATE AND EMERGENCY RELIEF FROM THE**
**AUTOMATIC STAY – WITH 30-DAY WAIVER**

This matter is before the Court on the *Motion of the AgStar Entities for Immediate and Emergency Relief from the Automatic Stay – With 30-Day Waiver* (the "Motion"). Having reviewed the Motion and record herein, having been advised that notice of the Motion has been provided to the Debtor, Debtor's counsel, and the Office of the United States Trustee, having determined that service of both the Motion and Notice of Hearing thereon were adequate and in compliance with the Bankruptcy Code and all applicable bankruptcy rules (including local rules), and being otherwise fully advised in the premises, the Court finds that (i) cause exists to immediately and permanently modify the automatic stay; (ii) Debtor has no equity in the

Property and has no reasonable expectation of reorganization; and (iii) Debtor's Chapter 11 filing was made in bad faith and the interest of justice and the convenience of the parties will best be served by modification and termination of the automatic stay created under Section 362(a) of the Bankruptcy Code to allow the AgStar Entities and the Receiver to proceed with the sale of the Property without further delay.  Accordingly, it is

**ORDERED:**

1.      The Motion is GRANTED in its entirety.

2.      Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

3.      The AgStar Entities are granted relief from the automatic stay to have the sale of the Property proceed without delay and in accordance with all orders of the District Court.  Such relief from the automatic stay shall be broadly construed to allow the AgStar Entities and the Receiver to take any and all actions reasonably necessary to effectuate the sale of the Property and carry out all orders of the District Court with respect to the Property, including without limitation, disbursement of proceeds for the sale without further report to this Court.

4.      The 30-day period proscribed in Section 362(e) of the Bankruptcy Code is hereby waived.

###